### THE WRESTLER.

### THE TRANSFER NO. 22.

#### (District Court, S. D. New York. April 30, 1912.)

COLLISION (§ 95*)—TUGS WITH TOWS MEETING—FAULT.

    A collision at night in the Greenville Channel in upper New York Bay, which is 800 feet wide, between tows alongside of two meeting tugs which approached each other on opposite sides of the channel, green to green, so that it was their duty under the rules to pass starboard to starboard, *held* due to the fault of the tug passing down which attempted to so pass in accordance with the signals of the other, but failed because she would not mind her helm. The other *held* not in fault for not stopping until her second signal, which immediately followed the first, was not answered.

    [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

    Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

In Admiralty. Suit for collision by the New York, New Haven & Hartford Railroad Company, owner of Car Float No. 52, against the steam tug Wrestler, the River & Harbor Transportation Company, claimant; and cross-libel against the tug Transfer No. 22, New York, New Haven & Hartford Railroad Company, claimant. Decree for libelant.

Burlingham, Montgomery & Beecher, of New York City, for libelant.

James T. Kilbreth, of New York City, for claimant.

WARD, Circuit Judge. This is a libel and cross-libel.

January 19, 1910, at about 4 p. m., Transfer No. 22, with a car float on each side, entered the Greenville Channel in the Upper Bay under one bell on her way to the float bridges at the Pennsylvania Terminal. This is a straight dredged channel nearly a mile long and 800 feet wide, running from the Main Ship Channel about northwest and southeast. As she proceeded up on the south side of the channel, her master saw the tug Wrestler with a car float on her port side coming out from the Greenville float bridges on the northerly side of the channel. The tugs were showing green to green, and No. 22 blew a signal of two whistles, which, not being answered, she immediately repeated, and, seeing the Wrestler coming over toward her, stopped, blew an alarm, and went full speed astern. The Wrestler blew an alarm, stopped, and backed, but the port corner of her float came into contact with the starboard corner of No. 22's port float.

At the trial and upon the argument the cross-libelant relied greatly upon the Transfer's violation of the narrow channel rule. Article 25 of the Inland Regulations (Act June 7, 1897, c. 4, 30 Stat. 96 [U. S. Comp. St. 1901, p. 2883]). This was not pleaded at all, and I attach very little importance to the contention. It had nothing to do with the collision. Article 18, rule 1, of the Inland Regulations, made it under the circumstances the duty of the vessels to pass starboard to starboard. The cross-libel shows clearly that the master of the Wrestler understood this, and he intended and tried to do so, but was prevented, as he states in his pleading, by the fact that the tug did not mind her helm, "either from the steering gear sticking or from some other cause." This was what brought about the collision. If it was from the gear sticking, the proofs show that he had a similar experience the evening before, and therefore no accident attributable to it the morning after could be regarded as inevitable. If it occurred because the master threw the wheel over too suddenly, or because the float on his port side prevented the starboard helm from operating as it should, these were matters in respect to which the tug was negligent.

The case of the Gladiator and Transfer No. 19, relied upon by the cross-libelant, is different. In it the Circuit Court of Appeals inculpated the Transfer also because her master was at fault for not stopping on either horn of a dilemma, viz., if he thought the tug was disabled, the duty to stop was obvious. If, on the other hand, he thought she was deliberately backing into her slip, the case was one of special circumstances, and he should have aided the maneuver. In the case under consideration, Transfer No. 22 had no reason to suppose the Wrestler unmanageable, and the situation was not one of special circumstances, but one regulated by the Inland Rules which made it the duty of the vessels to pass starboard to starboard.

The collision being fully explained by the clear fault of the Wrestler, there is no reason to be astute in looking for fault on the part of Transfer No. 22.

The cross-libelant contends that the Transfer had no right to continue when the Wrestler did not answer her first signal, but I think the Transfer had no ground for failing to understand the intention of the Wrestler until he had received no answer to its second signal, which was immediately repeated. Then it did stop, blow an alarm, and reverse full speed astern. If the failure of the Transfer to stop and reverse sooner had in any way misled the Wrestler, there would be some reason for inculpating the Transfer, but it did not. The cause of the collision being, as I have stated, that the master of the Wrestler found himself unable to perform the very movement which the Transfer invited, which the law required and which he intended to accomplish, the usual interlocutory decree may be entered in favor of the libelant, and the cross-libel dismissed, with costs.